**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

October 15, 2019

**By ECF**

The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **United States v. Kabine Kaba**
      **19 Cr. 242 (PAC)**

Dear Judge Crotty:

In 2018, financial pressure was mounting on Kabine Kaba. His father was unable to work due to a physical disability and his mother was struggling to make ends meet as a hair stylist while caring for four children. As a teenager, Kabine got caught up in the wrong crowd and committed youthful offenses that landed him in prison just before his high school graduation. While incarcerated he earned his GED. After he was released, he began attending Bronx Community College until he was no longer able to afford it and the college's bursar froze his account. These financial problems caused Kabine to participate in a conspiracy to steal checks out of mailboxes and attempt to deposit them. He deeply regrets this crime, and he accepts full responsibility for his actions. See Ex. A (Letter from Kabine Kaba).

Kabine stands before this Court having pled guilty to one count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. The United States Probation Office has calculated the Guidelines to be between 21 and 27 months while the parties' plea agreement sets the range at 10 to 16 months. See Presentence Report ("PSR") at 18. After his arrest, Kabine was incarcerated for several months because of a New York parole hold that expired in January 2019. Following the expiration of his parole, Kabine was released, and he made real strides on by voluntarily joining a youth reentry network through which he earned a full-time job at FedCap that he held until August. See Ex. B (Letter from Friends of Island Academy). Unfortunately, in August Kabine was arrested by the NYPD for a new offense and then placed on home incarceration by Magistrate Judge Freeman. Id.

**The Honorable Paul A. Crotty**                                                                 Page 2 of 8
<u>United States v. Kabine Kaba</u>
**Sentencing Letter (October 15, 2019)**

¶ 50. Since then, Kabine has been fully compliant with his bail conditions and stayed at home full time to help his father and two younger siblings. Kabine makes food for his siblings each day, ensures they go off to school, and he helps with their homework and other childcare responsibilities.

After considering the factors set forth in 18 U.S.C. § 3553(a), the defense submits that no additional time in prison is necessary to meet the goals of sentencing. The defense therefore respectfully requests the Court sentence Kabine to time served with a period of supervised release that includes continued home detention for an additional year as well as continued counseling for Kabine's dependence on marijuana.

## Kabine's Upbringing & Challenges

Kabine was born in 1997 in Manhattan, and he is currently 22 years old. <u>Id.</u> ¶ 53. His family is from the West African country Guinea and speak the Mandinka language in addition to English. <u>Id.</u> ¶¶ 53, 69. He has lived his entire life in two different small apartments in the Bronx with his three brothers (now ages 24, 16, and 8) and his mother, Fatoumata, and father, Nounke. <u>Id.</u> ¶¶ 53, 57. As first-generation immigrants, Kabine's parents are extremely hard working (albeit underpaid). <u>Id.</u> ¶¶ 53–54. Kabine's mother has worked braiding hair in the Bronx since the early 1990s. <u>Id.</u> ¶ 53. His father worked as a livery cab driver, but stopped working in April 2018 due to arthritis in his knee. <u>Id.</u> Kabine's family life revolves around his Bronx community and going to Mosque. <u>Id.</u> ¶ 54.

Kabine had a stable though impoverished childhood. Kabine and his family live in a West African community in the Bronx where everybody knows each other and worships together. <u>Id.</u> He is a devout Muslim who attended mosque every Friday (prior to his home incarceration), and he prays five times daily. <u>Id.</u> As a young boy, Kabine enjoyed going to school, and he excelled in his classes. He took advantage of multiple afterschool programs, had a lot of friends, and he did not get in any trouble. His older brother Aly remembers that Kabine's childhood was "extremely difficult" because of his family's difficulty adjusting to American culture which made it challenging for Kabine to maintain childhood friendships. Ex. C (Letter from Aly Kaba). That said, Aly describes Kabine as intelligent and very caring, especially towards their family. <u>Id.</u> For example, Kabine has helped to raise their two youngest siblings because of their father's disability and their mother's work schedule. <u>Id.</u> at 2. Because Aly is away in Albany working, he relies on Kabine to take care of their

**The Honorable Paul A. Crotty**   Page 3 of 8
**United States v. Kabine Kaba**
**Sentencing Letter (October 15, 2019)**

family, as Kabine makes sure their little brothers have all of their daily necessities, including supervision. Id.

Although Kabine's home was stable, his neighborhood in the South Bronx was filled with violence and drugs, and as he got older, those influences entered into Kabine's life. Id. ¶ 54. The stress of his neighborhood and the challenges of high school led Kabine to start smoking marijuana and hanging out older men in his community, who were bad influences. PSR ¶ 62. As a result of his desire to fit in with his new friends and form his own identity apart from his structured and ordered home environment, Kabine made several bad decisions. He continued to smoke marijuana and developed a strong emotional dependence on the drug. More troubling still, when he was 16 years old, Kabine and his friends were arrested for stealing laptops and other items. Id. ¶¶ 42–44. He pled guilty for his crimes and was adjudicated a youthful offender in each. Id. He was sentenced to 16 months to four years imprisonment. Id.

While incarcerated, Kabine tried to make the best of his situation. He participated in the Shock Incarceration Program, a military-style boot camp, where he successfully completed 650 hours of hard work as well as 260 hours of academic education. Kabine succeeded in this program, earning his GED along the way. Id. ¶ 66. In spite of his successes in the program, Kabine was very scared that his life was over as a result of his conviction. However, within the structure of the Shock program and because of the mentorship provided there, Kabine was able to complete the program and create a plan of action for his life after prison. Once released in January 2018, Kabine started studying at Bronx Community College. Id. ¶ 67. Kabine attended for a semester, but did not continue in the fall of 2019 because he had difficulty obtaining financial aid. Id. Since he owed money for his first semester, Kabine's goal was to save up and then start school again in January 2019. It was during this time that Kabine committed the offense for which he pleaded guilty.

### Kabine's Offense Conduct

Kabine pleaded guilty to joining a conspiracy to commit bank fraud by stealing checks out of the mail and attempting to cash them. Id. ¶¶ 9–22. Kabine and two other young people were caught in a car with stolen checks along with tools used to retrieve checks out of mailboxes and to alter the checks. Id. ¶ 19. Although Kabine

**The Honorable Paul A. Crotty**  Page 4 of 8
**United States v. Kabine Kaba**
**Sentencing Letter (October 15, 2019)**

possessed several stolen checks, he did not profit from this scheme in anyway.[1] These actions occurred while Kabine was attempting to find money to return to school and soon after his father stopped working due to his disability. Kabine had trouble finding work after returning home from prison given his lack of job experience. Given how his parents had stressed the importance of education and financial stability, he wanted a job that would propel him into a career. There are no allegations of violence in this offense, and Kabine is deeply sorry for his actions. See Ex. A.

## Kabine's Post-Arrest Conduct

After Kabine was released from New York custody at the completion of his parole sentence in January 2019, he began working with Rachelle D. Veasley, the Director of the Federal Defenders social work team to voluntarily seek out structure and programming. Rachelle and a mentor he met on Rikers Island, Chaz Johnson, helped Kabine enroll in educational programs to allow him to pursue his goals of finding a part-time job and to eventually return to school. See Ex. C. At the Friends of Island Academy, Kabine prepared a resume, got his social security card, and worked with Mr. Johnson to find an internship after he completed career training. Id. Kabine also enrolled in the College Initiative at John Jay College of Criminal Justice. This program provides practical assistance to formerly incarcerated men and women to help them enroll and succeed in college. Kabine also began participating in a drug counseling program to help him ween himself off of marijuana, which he used for years to cope with the stresses of life. PSR ¶ 62.

Mr. Johnson describes Kabine as a "respectful, ambitious and determined young man." Ex. C at 1. Kabine's hard work in the program paid off. Starting in March 2019, Kabine was hired as an intern at Fed Cap in the mail room. Then, in May 2019, he was promoted to a full-time employee earning $15 an hour. PSR ¶ 70. Once he started getting paid, Kabine gave half of his earnings to his parents to help them make ends meet. Ex. A. Kabine took great pride in this job, and he worked approximately 30 hours a week between May and late-August when he was arrested for a new offense in Manhattan and subsequently placed on home incarceration by Magistrate Judge Freeman. PSR ¶ 50. Kabine is currently released on his own recognizance in the state court matter, and he has attended all of his court dates since

---

[1] The Government has informed the defense that it will move to amend the PSR to address the loss caused by Kabine and his restitution responsibilities on the date of sentencing. Kabine will not be required to pay any restitution as he did not successfully cash any of the checks.

**The Honorable Paul A. Crotty**  Page 5 of 8
**United States v. Kabine Kaba**
**Sentencing Letter (October 15, 2019)**

his arrest. As he writes in his letter to the Court, Kabine knows that this arrest was a terrible mistake, which he says was an act of "desperation." Ex. A.

Since August, Kabine has been confined to his home and has only left to attend his young cousin's funeral after his cousin was accidentally shot to death. Kabine has been helping his brothers and parents and thinking all the time about changes he wishes to make in his life and how to ensure he leaves the criminal justice system behind. See Id. Kabine hopes to return to FedCap and re-enroll at Bronx Community College. He understands that to do this, the Court will be required to give him a "third chance," which the defense believes in appropriate given the nature and circumstances of Kabine's life. Id.

## The Most Appropriate Punishment

Section 3553(a) of Title 18 of the United States Code mandates that the Court impose a sentence "sufficient, but not greater than necessary" to achieve the goals of retribution, deterrence and rehabilitation. Considering each of these goals, a sentence of time served followed by a period of supervised release that includes a year of home detention and continued drug counseling is the most appropriate sentence given: (1) Kabine's life circumstances; (2) the nature and circumstances of his offense; and (3) the remaining Section 3553(a) factors.

I. **Kabine's Life Circumstances Call for a Sentence of Time Served with Home Detention.**

Kabine has made several mistakes in his young life, but he also has many strengths. At 22 years old, he has the opportunity to leave these errors in the past and live a productive and law-abiding life. This conviction is Kabine's first felony conviction given that his previous offenses are sealed youthful convictions. See PSR ¶¶ 42–44. As described in his brother Aly's letter of support, Kabine is a deeply committed family man, who loves his siblings and parents. Kabine takes great pride in helping his younger siblings and keeping them out of trouble, and he is also interested in bettering himself. On his own, Kabine joined the Friends of Island Academy, earning his first job and helped his family by giving them half of his earnings. Should the Court adopt the defense's recommended sentence, Kabine can continue to help his family in the home and return to his job at FedCap so he can help his parents financially while Probation ensures that he remains compliant with the Court's stringent supervised release standards.

**The Honorable Paul A. Crotty**                                                                          Page 6 of 8
**United States v. Kabine Kaba**
**Sentencing Letter (October 15, 2019)**

> II. **The Nature and Circumstances of Kabine's Crime Calls for a Sentence of Time Served with Home Detention.**

Kabine recognizes the harm he caused by stealing checks that did not belong to him even if the checkers were not cashed. It is a decision he deeply regrets, but when considering the nature and circumstances of the offense, a variance from the Guidelines is warranted.

As stated above, this is Kabine's first felony offense. The offense is non-violent and for a relatively low dollar amount for a federal court case. Moreover, the Guideline range of 21 to 27 months actually overstates the seriousness of Kabine's conduct. Kabine's range includes a six-point adjustment because the intended loss was more than $40,000 but less than $95,000. Id. ¶ 33. While the defense acknowledges that the U.S.S.G. § 2B1.1 Guideline is concerned with intended, rather than actual loss, we ask the Court to consider whether the six-point enhancement as applied overstates the seriousness of Kabine's conduct given that he did not successfully cash any of the checks or cause any actual loss. If this enhancement was not applied, Kabine's Guideline range would drop to four to ten months, using Probation's Criminal History Category or zero to six months, relying on the plea agreement. Given the nature of the offense and the manner in which the Guidelines are calculated, a variance to time served with a year of home detention is the most appropriate sentence.

> III. **A Sentence of Time Served with Home Detention Gives Due Consideration to Each of the Remaining Section 3553(a) Factors.**

In United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006), the Second Circuit explained that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, **it must choose the lower sentence**. After analyzing the additional 3553(a) factors, a sentence of time served is most appropriate. A sentence of time served would not create sentencing disparities, as downward variances in fraud cases are common place in this District. See 18 U.S.C. § 3553(a)(6). In the 2018 fiscal year, courts in this District sentenced defendants below the advisory sentencing Guidelines in 55.2% of fraud cases (that number increases to 67.1% when one includes those defendants that cooperated). See Table 10, U.S.S.C., Statistical Information Packet, Fiscal Year 2017 (attached as Exhibit D). As such, a sentence of time served would not result in unwarranted sentencing disparities.

**The Honorable Paul A. Crotty**                                                        Page 7 of 8
**United States v. Kabine Kaba**
**Sentencing Letter (October 15, 2019)**

      As to deterrence, Kabine has fully learned his lesson. He will not reoffend, and should New York believe it is warranted, he will be pushed by their courts for his open case. Research shows that a more severe sentence does not lead to greater specific deterrence for individual defendants. See The Honorable Peggy Fulton Hora & Theodore Stalcup, Drug Treatment Courts in the Twenty-First Century: The Evolution of the Revolution in Problem-Solving Courts, 42 GA L. REV. 717, 724 (2008). The same can be said for general deterrence. Studies have proven that more severe sentences do not result in greater general deterrence. See Michael Tonry, Purposes and Functions of Sentencing, 34 CRIME AND JUSTICE: A REVIEW OF RESEARCH 28–29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."). Evidence-based studies strongly support the conclusion that it is the certainty of being prosecuted rather than the severity of punishment that deters crime.[2] The fact that Kabine was prosecuted and punished will provide sufficient general deterrence; further incarceration is not required.

## Conclusion

      Kabine is still very young, and he is filled with potential. His experience in the federal system has shaken him, and he understands he cannot look for easy solutions to financial problems, but he must rely on honest hard work to help himself and his family. Sentencing him to time served with a year of home detention will allow Kabine to continue caring for his siblings while returning to work to help his parents. Punishing Kabine beyond the time he has already served is not necessary to satisfy the purposes of sentencing. He is deeply sorry for the crime he committed, and he does not require further incarceration to ensure his compliance with our laws. Thank you for your consideration of this request.

---

[2] See Nat'l Inst. of Just., Five Things About Deterrence, Jun. 6, 2016 (attached as Exhibit E).

**The Honorable Paul A. Crotty**　　　　　　　　　　　　　　　　　　　**Page 8 of 8**
<u>**United States v. Kabine Kaba**</u>
**Sentencing Letter (October 15, 2019)**

　　　　　　　　　　　　　　　　　　　　　　Very Truly Yours,

　　　　　　　　　　　　　　　　　　　　　　/s/ _____
　　　　　　　　　　　　　　　　　　　　　　Ian H. Marcus Amelkin
　　　　　　　　　　　　　　　　　　　　　　Assistant Federal Defender
　　　　　　　　　　　　　　　　　　　　　　Federal Defenders of New York, Inc.
　　　　　　　　　　　　　　　　　　　　　　52 Duane Street, 10th Floor
　　　　　　　　　　　　　　　　　　　　　　New York, NY 10007
　　　　　　　　　　　　　　　　　　　　　　Tel.: (212) 417-8733

Cc.　Ni Qian, Esq.
　　　Assistant United States Attorney
　　　Southern District of New York