UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                :
UNITED STATES OF AMERICA,         :
                :
     -v-               :
                :
KABINE KABA,                 19 Cr. 242 (PAC)
                :
        *Defendant.*         :      **OPINION & ORDER**
                :
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      On May 5, 2020, Defendant Kabine Kaba ("defendant" or "Kaba") joined the chorus of defendants filing emergency motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic. (Def. Mot., Dkt. 79.) Kaba has served five months of a ten-month sentence at FCI Ray Brook. (*Id.*) Kaba is 23 years old, and he has no reported medical conditions that would make him particularly vulnerable to COVID-19. Nevertheless, Kaba seeks compassionate release in light of the dangers posed given the "pervasive and deadly nature of COVID-19." (*Id.* at 2.) The Government opposes defendant's motion. (*See* Gov. Opp'n, Dkt. 80.)

      The Court recognizes that COVID-19 has spurred a public health crisis and national emergency with a recommended treatment of social distancing, which is difficult to achieve in federal prison facilities. Results of the current pandemic include a flood of applications for compassionate release, shifting Bureau of Prisons ("BOP") practices, and an uncertain legal landscape. Moreover, medical guidance on the risk factors and symptoms of COVID-19, as well

1

as best practices for prevention continue to evolve as the pandemic progresses. Such conditions present new and complex challenges for protecting inmates' health and require courts to make fact-specific determinations on an ad hoc basis.

For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

The Court recounts the defendant's background because it is particularly relevant to his current motion. Defendant, while on parole from a New York state conviction for burglary in the third degree, committed the offense to which he pled: a check fraud conspiracy from at least April 2018 up to and including November 2018. The defendant and his co-conspirators obtained stolen checks, altered the checks, and deposited them into the bank accounts of third-parties that they recruited, and then attempted to withdraw the funds. The defendant was also caught with over a hundred stolen checks when he was arrested for driving with a suspended license. Police officers found other materials that may be used in furtherance of these types of schemes—for example, brake fluid, which can be used to erase pen ink, and a pole with a small hole, which can be used to fish letters out of mailboxes.

On November 28, 2018, the defendant was arrested and charged with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. He was released on bail subject to home detention as enforced by electronic monitoring. On March 20, 2019, with consent from the Government, the bail condition of home detention as enforced by electronic monitoring was modified to a curfew, enforced by location monitoring to enable the defendant to attend an internship.

On June 3, 2019, the defendant pled guilty to an Information, charging him with one count of conspiracy to defraud the United States, in violation of Title 18, United States Code,

Section 371.  On July 24, 2019, while awaiting sentencing, the defendant was arrested by the New York City Police Department for possession of 16 checks and 5 debit cards that did not belong to him.  On August 7, 2019, the defendant's bail conditions were modified again to include home incarceration as enforced by electronic monitoring, with the defendant's parents to act as third party custodians.  On October 17, 2019, the Court sentenced Kaba to ten months' imprisonment.  At the sentencing the Court noted that the defendant "had not been deterred from criminal conduct by his prior experience with the state and federal government's correction system," and that he is "a poor candidate for community supervision."  Sent. Tr. at 10-11, Dkt. 59.  The Court was "troubled by the fact that while [the defendant] was on supervision, he committed this crime, and even when he had been charged with a crime he took advantage of his being out on bail and was caught again with a number of checks of which he had stolen."  *Id.* at 10-11.  Further, during the sentencing pretrial services reported difficulty with supervising the defendant, as he often could not be reached via phone and requested that the Court modify bail to require that a landline be installed at the defendant's place of residence until his self-surrender date of December 2, 2019.  *Id.* at 13-15.

## COMPASSIONATE RELEASE

It is well established that "[a] court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Gotti*, No. 02-CR-743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020).  The compassionate release provision allows a district court to "reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances."  18 U.S.C. § 3582(c)(1)(A)(i).  A motion under this provision may be made by either the BOP or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Where a defendant has exhausted his administrative rights or where 30 days from the receipt of such a request has passed, compassionate release provides a mechanism for a court to reduce a term of imprisonment where, after considering the factors set forth in Section 3553(a), the court finds, "extraordinary and compelling reasons" warrant such a reduction and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(i). Application Note 1 to U.S.S.G. § 1B1.13 addresses when extraordinary and compelling reasons exist:

(A) Medical Condition of the Defendant

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).
    (ii)    The defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

…

(D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Defendant, through counsel, submitted his application for release to the Warden at FCI Ray Brook on April 2, 2020. *See* Dkt. 79-1. The Warden at FCI Ray Brook denied the

defendant's letter seeking compassionate release.  *See* Dkt. 82.  The parties agree that the Court has the authority to determine the merits of Kaba's application.  Kaba, however, fails to demonstrate evidence of extraordinary and compelling reasons, which warrant a sentence reduction.  Given the need for specific deterrence in this case, the length of time remaining to be served on Kaba's sentence, and the lack of any underlying health conditions, the circumstances do not warrant compassionate release.

Defendant is 23 years old and therefore is outside the age of groups deemed most at risk of developing severe illness from COVID-19.  The defendant is not presently sick, nor does he suffer from any reported underlying medical conditions.  Although defendant's place of confinement, FCI Ray Brook, has reported positive COVID-19 cases, the Government represents that the eleven inmates with confirmed cases have recovered.  (*See* Gov. Opp'n, at 5.)  Further, although the defendant is at risk of contracting COVID-19 if he remains in prison, he will also be at risk if he were to return to his home in the Bronx borough of New York City.[1]

In addition, the same Section 3553(a) factors that the Court considered at Kaba's sentencing continue to justify his sentence today and weigh against reducing his sentence to time served.  The defendant's instant conviction was his fifth conviction in approximately five years.  The defendant appeared undeterred from criminal conduct as he committed the instant offense while on parole for a similar state court conviction, and then while awaiting sentencing in this Court the defendant took advantage of bail and was arrested with stolen checks and debit cards.

---

[1] As of May 12, 2020, the Bronx borough has the highest number of positive cases of COVID-19 per 100,000 people.  NYC Health, *Rates By Borough*, https://www1.nyc.gov/site/doh/covid/covid-19-data.page.  Data as of May 12, 2020 for the zip code where the defendant resides indicates that the percentage of patients testing positive for COVID-19 is between 42% and 53%.  NYC Health, *Percent of Patients Testing Positive by Zip Code in New York City as of May 12, 2020*, https://www1.nyc.gov/assets/doh/downloads/pdf/imm/covid-19-data-map-05122020-1.pdf.

His current sentence reflects this Court's careful consideration of his age, prior criminal conduct, lack of compliance with bail conditions as well as the need for specific deterrence.

Ultimately, the defendant's motion hinges predominantly on his status as an inmate during the COVID-19 pandemic and generalizations concerning the spread of COVID-19 in federal detention centers across the country. If such speculative assertions and generalizations were sufficient, it would follow that every federal inmate should be released from detention due to COVID-19—a consequence which undermines the goals of sentencing, does not promote respect for the law, and does not remotely fit with the limited scope of compassionate release.

## **CONCLUSION**

For the reasons stated, the defendant's motion for compassionate release is denied. The Clerk of the Court is directed to terminate the motion at Docket 79.

Dated: New York, New York  
      May 18, 2020

SO ORDERED

_____  
PAUL A. CROTTY  
United States District Judge